Honorable Alfred B. Del Bello Lieutenant Governor
You have asked whether you and members of your staff are prohibited by section 107 of the Racing, Pari-Mutuel Wagering and Breeding Law from having an interest in or owning of racehorses, or from having an interest in corporations or partnerships that own racehorses.
In order for the New York State Racing and Wagering Board to have proper control of races conducted in the State, owners, part-owners, and lessees of thoroughbred racehorses must be licensed by the Board (Racing, Pari-Mutuel Wagering and Breeding Law, § 213[1]). In addition, horse-owning syndicates of 35 or fewer members may be formed, with each member a stockholder, and every stockholder is required to be licensed as an owner (9 NYCRR Subtitle T, § 4002.9[b][1]). Thus, an owner's license is required to own a thoroughbred racehorse, whether such ownership is direct or via a syndicate.
The Board, in its discretion, may also license the owners of harness horses and quarter horses (Racing, Pari-Mutuel Wagering and Breeding Law, §§ 309[1] and 409[1]). Under this authorization, the Board by rule has provided that persons may not participate as owners in harness race meets or quarter horse race meets unless they have an occupational license from the Board (9 NYCRR §§ 4101.24[b] and 4205.1[b]).* In addition, horse-owning associations, corporate or otherwise, may be formed, but every member or stockholder must be licensed (9 NYCRR Subtitle T, §§ 4107.2[a], 4107.5 and 4205.1[g]). Thus, we believe that an occupational license is required for ownership of a harness horse or quarter horse which participates in race meets, whether that ownership is direct or via a corporation.
Since owners of racehorses must be licensed for New York State racing, it is next necessary to determine if the Lieutenant Governor and members of his/her staff are barred by law from obtaining licenses. Following an investigation of harness racing at the request of Governor Thomas Dewey by a Moreland Act Commission, chapter 514 of the Laws of 1954 for the first time prohibited all public officers, public employees and party officers from holding any license from the State Racing Commission (thoroughbreds) or the State Harness Racing Commission. Such "drastic and unprecedented limitations" were imposed upon political officers because racing had become a government monopoly whose income was government controlled (Governor's Memorandum of Approval, 1954 New York State Legislative Annual 401, 402).
Under current section 107(1) of the Racing, Pari-Mutuel Wagering and Breeding Law:
 "1. No public officer * * * shall hold any license from the state racing and wagering board." (Emphasis supplied.)
A "public officer" is defined as:
 "Every elected state * * * officer * * * as defined in section two of the public officers law, whose duties relate to pari-mutuel racing activities or the taxation thereof, * * * [or] a member or officer of the state legislature * * *" (Emphasis supplied; Racing, Pari-Mutuel Wagering and Breeding Law, § 107[6][a].)
Thus, if the Lieutenant Governor is either an elected State officer whose duties relate to pari-mutuel racing activities or the taxation thereofor is an officer of the State Legislature, he is barred from holding any Board-issued license, including an owner or occupational license.
According to section 2 of the Public Officers Law:
 "The term `state officer' includes every officer for whom all the electors of the state are entitled to vote * * *."
All the electors of the State are entitled to vote for the Lieutenant Governor (NY Const, Art IV, § 1). Thus, the Lieutenant Governor is a State officer within the meaning of section 2 of the Public Officers Law. To determine whether the Lieutenant Governor is barred from obtaining a license under section 107 of the Racing, Pari-Mutuel Wagering and Breeding Law, the duties of the office must be examined to see if they "relate to pari-mutuel racing activities or the taxation thereof" (id., at [6][a]).
The only duty expressly assigned to the Lieutenant Governor is to be the President of the Senate, with only a casting vote (NY Const, Art IV, § 6; Senate Rule I, § 1). Under English common law, the casting vote was given to the president of a deliberative assembly in order to break ties in the voting (Jowitt's Dictionary of English Law [Sweet 
Maxwell Limited, 1977] 2d Ed, Vol 1). Since 1846, following a State constitutional amendment which required that no bill could be passed or become law except by the assent of a majority of the members elected to each branch of the Legislature, the Lieutenant Governor has been able to use a casting vote only upon procedural motions and resolutions (NY Const, Art III, § 14; 1979 Legislative Procedures Manual for the Senate and Assembly, p 107).
Accordingly, we consider whether a vote on resolutions and procedural motions can "relate to pari-mutuel racing activities or the taxation thereof". Certainly a resolution could be proposed dealing with racing and procedural motions, for example, to table or recall a bill could be used with regard to racing legislation. Thus, we believe that the Lieutenant Governor's constitutional duty to preside over the Senate and to exercise a casting vote can relate to pari-mutuel racing activities or their taxation and that the Lieutenant Governor is thus prohibited from holding any license from the Board, including an owner or occupational license, under section 107. We note that Governor Carey's approval message for chapter 871 of the Laws of 1980, which added the prohibition regarding officers whose duties relate to pari-mutuel racing, emphasized that the majority of public employees would be permitted to be licensed when no conflict of interest would result, but that licensing of public officers and others would be prohibited "where even the appearance of a conflict might arise" (emphasis supplied). (Governor's Memorandum of Approval, Bill Jacket, L 1980, ch 871.)
Moreover, the Lieutenant Govenor, as President of the Senate, is an officer of the Senate (see Legislative Law, § 6[2]; 1979 Legislative Procedures Manual for the Senate and Assembly, p 106). We believe that the Lieutenant Governor is thus an officer of the State Legislature and subject to the blanket prohibition against members or officers of the State Legislature holding any licenses from the Board (Racing, Pari-Mutuel Wagering and Breeding Law, § 107[6][a]). Therefore, we conclude the Lieutenant Governor is a public officer within the meaning of section 107 for two reasons — as an elected State officer whose duties are racing-related and as an officer of the State Legislature.
We turn then to the applicability of section 107 to members of your staff. According to section 107 of the Racing, Pari-Mutuel Wagering and Breeding Law:
 "2. The following public employees are prohibited from holding any license from the board * * *
 b. an employee of the state legislature * * *."*
Section 6(2) of the Legislative Law provides:
 "Employees of the president of the senate who are paid from appropriations made for the legislature shall be considered as employees of the legislature for all purposes." (Emphasis supplied.)
The Legislature has thus determined that inclusion of the salary of a member of the Lieutenant Governor's staff in the legislative budget classifies that person as a legislative employee for all purposes. Those employees are thus barred from holding an owner or occupational license pursuant to section 107. Although prior to 1983 part of the Lieutenant Governor's staff was paid from the Executive Budget and part from the Legislative Budget, section 1 of chapter 51 of the Laws of 1983 consolidated the entire staff payroll in the Legislative Budget. Therefore, we believe that all members of the Lieutenant Governor's staff are "employees of the state legislature" under section 107 of the Racing, Pari-Mutuel Wagering and Breeding Law and are thus barred from holding a Board-issued owner or occupational license.
We conclude that the Lieutenant Governor and all members of the Lieutenant Governor's staff are prohibited by section 107 of the Racing, Pari-Mutuel Wagering and Breeding Law from having an interest in or ownership of racehorses, or from having an interest in corporations or partnerships that own racehorses, except for persons continuously licensed since April 6, 1954.
* Although no person is allowed to perform any service in or at any harness race meet without an occupational license, an exception is made for "public officers and public employees engaged in the performance of their official duties." (9 NYCRR Subtitle T, §§ 4101.24[b][1] and 4205.1[b][1].)
* Such employees whose duties do not involve pari-mutuel racing are exempt from this prohibition if they held any license from the Board while employed by the State Legislature prior to July 1, 1980 (ibid.). This exemption was added by chapter 479 of the Laws of 1981 to permit a very limited number of people who were previously licensed by the Board ("perhaps through [the Board's] clerical error") while employees of the State Legislature, to retain their licenses (Memorandum in Support from the Counsel to the New York State Racing and Wagering Board to the Counsel to the Governor, Bill Jacket, L 1981, ch 479). We note that if the Lieutenant Governor or any member of the Lieutenant Governor's staff were engaged in any racing activity on April 6, 1954 and have been continuously engaged in that activity since, they are not barred by section 107 from holding any Board-issued license (Racing, Pari-Mutuel Wagering and Breeding Law, § 107[5]).